UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23061-CIV-MARTINEZ/SANCHEZ

ON CLOUDS GMBH,

    Plaintiff,

v.

ONCLOUDSHOESFORALL.COM; ON-CLOUDY.COM; SHUCKSON.COM; OKDBEST.COM; REVERIEH.COM; LETFOFACT.LIFE A/K/A TOPDTEVEN.BEST; and USFASHIONBUY.COM, EACH AN INDIVIDUAL, BUSINESS ENTITY, OR UNINCORPORATED ASSOCIATION,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT**

This matter is before the Court on the Motion for Entry of Default Final Judgment Against Defendants, ECF No. 40, filed by the Plaintiff On Clouds GmbH.[1] A Clerk's default was entered against the Defendants.[2] *See* ECF No. 39. The Plaintiff now seeks entry of default final judgment against the Defendants. ECF No. 40. The Defendants did not file a response to the Amended Complaint, the Plaintiff's motion for entry of a Clerk's default, or the motion for default judgment, and the deadlines to do so have passed. After careful consideration of the Plaintiff's filings, the record, and the applicable law, and for the reasons discussed below, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's Motion for Entry of Default Final

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred the Plaintiff's motion to the undersigned for a report and recommendation. ECF No. 41.

[2] In addition to being listed in the case caption, the Defendants are listed in Schedule A, attached hereto.

Judgment Against Defendants, ECF No. 40, be **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiff sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C § 1125(a) (Count II); cybersquatting[4] pursuant to § 43(d) of the Lanham Act, 15 U.S.C § 1125(d) (Count III); common law unfair competition (Count IV); and common law trademark infringement (Count V). *See* ECF Nos. 1 (initial Complaint), 21 (Amended Complaint).

The Plaintiff is the owner of all rights in and to the trademarks identified on Schedule "B" to the Amended Complaint, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Plaintiff's Marks"). ECF No. 21 at ¶ 14; *see also id.* at 24-34 (Schedule "B" listing Plaintiff's Marks); ECF Nos. 21-1, 1-2 (Certificates of Registration for the Plaintiff's Marks). The Plaintiff's Marks are used in connection with the manufacture and distribution of high-quality clothing and goods in the categories identified on the trademark registration certificates. *See* ECF No. 21 at ¶ 14; *see also id.* at 24-34. The Plaintiff has never assigned or licensed the Plaintiff's Marks to any of the Defendants in this matter. ECF No. 21 at ¶¶ 16-17; *see also id.* at ¶¶ 29, 34.

The Amended Complaint establishes that the Defendants are promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeits and confusingly similar imitations of one or more of the Plaintiff's Marks in the Southern District of Florida through Defendants' Internet-based e-commerce stores operating

---

[3] The following facts are admitted as a result of the Defendants' default. *See, e.g.*, *Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024); Section II *infra*.

[4] The Plaintiff brought the claim for cybersquatting solely against Defendants oncloudsshoesforall.com; on-cloudy.com; and shuckson.com (that is, Defendant 1, Defendant 2, and Defendant 3).

under each of the domains used by the Defendants. *See, e.g.*, ECF No. 21 at ¶¶ 10, 23, 48, 73, 79; *see also id.* at ¶¶ 24-34.

The Plaintiff further asserts that the Defendants' unlawful activities have caused and will continue to cause irreparable injury to the Plaintiff because the Defendants (1) have caused and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' counterfeit goods and Defendants' e-commerce stores as a whole and all products sold therein by their use of the Plaintiff's Marks, *see* ECF No. 21 at ¶¶ 24, 31, 49, 55, 74; (2) misrepresented to members of the consuming public that the counterfeit goods they advertise and sell are genuine, non-infringing goods, *see id.* at ¶¶ 24, 57; (3) competed with the Plaintiff for space within organic search engine results and social media results, thereby depriving the Plaintiff of a valuable marketing and consumer education tool, *see id.* at ¶¶ 26, 58, 73; and (4) profited from the Plaintiff's Marks and the goodwill associated with the Plaintiff's Marks by registering and using store names that are identical, confusingly similar to, or dilutive of one or more of the Plaintiff's Marks, *see id.* at ¶¶ 63, 66, *see also id.* at ¶¶ 26, 30, 33, 38.

Plaintiff seeks the entry of default final judgment against the Defendants in this action alleging trademark counterfeiting and infringement, false designation of origin, cybersquatting, and common-law unfair competition and trademark infringement. *See* ECF No. 40. Plaintiff further requests that the Court (1) enjoin Defendants unlawful use of the Plaintiff's Marks; (2) award Plaintiff statutory damages against all Defendants pursuant to 15 U.S.C. § 1117(c) and additional statutory damages against Defendant 1, Defendant 2, and Defendant 3 pursuant to 15 U.S.C. § 1117(d); and (3) instruct any third-party financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to Plaintiff in partial satisfaction

of the award of damages. *See id.* at 1, 8-9, 13-14, 16. Plaintiff further requests that the Court order Defendants to (i) cancel, or at Plaintiff's election, transfer the e-commerce stores at issue to Plaintiff and assign all rights, title and interest to the e-commerce stores to Plaintiff; (ii) permanently disable, delist, or deindex the websites' uniform resource locators ("URLs") and the e-commerce stores from all search engines; and (iii) suspend the e-mail addresses used by Defendants, in order to ensure the associated e-commerce stores may no longer be used as a means for selling goods bearing and/or using counterfeits and infringements of the Plaintiff's Marks and infringing upon Plaintiff's rights. *See id.* at 2, 9-10, 16.

## II.    LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002). The effect of a clerk's default is that all of the plaintiff's well-pled allegations are deemed admitted. *See, e.g.*, *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015); *see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (defaulted defendant deemed to admit well-pled allegations, but "not held to admit facts that are not well-pleaded or to admit conclusions of law").

Only the well-pled allegations are admitted because "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) ("The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015).  Therefore, before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *see also, e.g.*, *Luxottica Group S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, No. 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017) ("Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered.").  If the admitted facts are sufficient to establish liability, then the Court must ascertain the appropriate amount of damages.  *Nishimatsu Constr. Co.*, 515 F.2d at 1206.  Where all the essential evidence needed to determine damages is found in the record, an evidentiary hearing on damages is not required.  *See, e.g.*, *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Bandyopadhyay v. Defendant 1*, No. 22-CV-22907, 2023 WL 2395475, at *1 (S.D. Fla. Mar. 7, 2023).

If there are multiple defendants, the plaintiff must state in the motion for default final judgment that there are no allegations of joint and several liability and set forth the basis why there is no possibility of inconsistent liability.  *Zuru Inc. v. Individuals*, No. 1:23-cv-22217, 2024 WL 1809310, at *2 (S.D. Fla. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 1797068 (S.D. Fla. Apr. 25, 2024).  Generally, if one defendant who is alleged to be jointly and severally liable with other defendants defaults, judgment should not be entered against that defendant until the matter is adjudicated against all the remaining defendants.  *Id.* (citing 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2690 (3d ed. 1998), and *Frow v. De La*

5

*Vega*, 82 U.S. 552, 554 (1872) ("[A] final decree on the merits against the defaulting Defendant alone, pending the continuance of the cause, would be incongruous and illegal.")).

Here, the Plaintiff has stated in its motion for default judgment that it is not seeking to hold Defendants jointly and severally liable. ECF No. 40 at 1 n.1. The Defendants have not appeared, and they have all defaulted on the same allegations. Therefore, there is no possibility of inconsistent liability among the Defendants based on the allegations of the Amended Complaint, and default judgment may accordingly be entered.

### III. ANALYSIS

#### A. Claims

*1. Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). In order to prevail on its trademark infringement claim under § 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same or confusingly similar to the Plaintiff's trademark such that consumers were likely to confuse the two. *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

To establish its claim, the Plaintiff alleged that it is the owner of all rights in and to the Plaintiff's Marks, *see* ECF No. 21 at ¶ 14, and that the Defendants, without the Plaintiff's permission, *id.* at ¶¶ 16-17, 29, 34, are using "counterfeit and confusingly similar imitations"—

indeed "virtually identical copies"—of the Plaintiff's Mark, *id.* at ¶ 23, in "advertising, selling, offering for sale, and/or distributing" their counterfeit goods, *id.* at ¶ 48. According to the Amended Complaint, such activities "are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public" and have caused and continue to cause damages to the Plaintiff. *Id.* at ¶¶ 49-50. Thus, the Plaintiff has sufficiently alleged facts establishing each of the elements necessary to state a claim for trademark counterfeiting and infringing under § 32 of the Lanham Act and is entitled to default judgment on this claim.

      2. *False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)*

To prevail on its claim for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must establish that Defendants used in commerce, in connection with any goods or services, "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of Defendants with Plaintiff, or "as to the origin, sponsorship, or approval of" Defendants' goods, services, or commercial activities by the Plaintiff. *See* 15 U.S.C. § 1125(a)(1)(A). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See, e.g.*, *Fendi S.r.l. v. Bag*, No. 19-cv-61356, 2019 WL 4693677, at *3 (S.D. Fla. Aug. 28, 2019) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring)); *Zuru Inc.*, 2024 WL 1809310, at *2 (same).

Here, the Plaintiff alleged that Defendants' goods "bearing, offered for sale, and/or sold using copies of one or more of the [Plaintiff's] Marks are virtually identical in appearance to

7

[Plaintiff's] genuine goods" and "have been widely advertised and offered for sale throughout the United States via the Internet." ECF No. 21 at ¶¶ 54-55; *see also* ECF No. 8-4 (web captures of Defendants' infringing online listings). Further, the Defendants' goods are "different in quality" from the Plaintiff's goods, which is "likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship" of the goods. ECF No. 21 at ¶ 55. The allegations establishing that the Defendants used the Plaintiff's Marks in commerce and caused confusion are sufficient to state a claim for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Plaintiff is therefore entitled to default judgment on Count II.

   3. *Cybersquatting Pursuant to § 43(d) of the Lanham Act (15 U.S.C. § 1125(d)) (Count III)*

The Plaintiff asserts a claim for cybersquatting solely against Defendants oncloudsshoesforall.com (Defendant 1); on-cloudy.com (Defendant 2); and shuckson.com (Defendant 3) ("the Cybersquatting Defendants"). To prevail on a claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), "a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1358 (S.D. Fla. 2008) (quoting *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006)).

Here, Plaintiff has alleged that Plaintiff's Marks "were already distinctive and famous at the time the Cybersquatting Defendants registered" their domain names and that those domain names are "are identical to, confusingly similar to, or dilutive of one or more of the" Plaintiff's Marks. ECF No. 21 at ¶¶ 64, 66. The registration of the Plaintiff's Marks on the principal federal trademark register, *see* ECF No. 21 at ¶ 14; *id.* at 24-34, "on which only marks not 'merely

8

descriptive' may be registered," further establishes their distinctiveness. *Punch Clock, Inc.*, 553 F. Supp. 2d at 1358 (citing 15 U.S.C. §1052(e)); *see also Two Pesos, Inc.*, 505 U.S. at 768 ("generic marks . . . are not registrable as trademarks"). Plaintiff has additionally established that the Cybersquatting Defendants' e-commerce store names and/or domains—on-cloudy.com, oncloudshoesforall.com, and shuckson.com—each of which incorporates at least one of Plaintiff's Marks, are confusingly similar to several of the Plaintiff's Marks. *See* ECF No. 21 at ¶¶ 32, 38, 66; ECF No. 1-2; *see also, e.g.*, *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) (explaining that "[t]he taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law" and that the "addition of generic or minor words to a trademark, especially a famous trademark, notwithstanding the positioning of the words, does nothing to abate likely confusion or dilutive effect"). Finally, the Plaintiff has also alleged that the Cybersquatting Defendants "have acted with the bad faith intent to profit from the [Plaintiff's] Marks and the goodwill associated with the [Plaintiff's] Marks by registering and using its Cybersquatted E-commerce Store Names'" and that their "conduct is done with knowledge and constitutes a willful violation of [Plaintiff's] rights in the [Plaintiff's] Marks" or, "[a]t a minimum . . . constitutes reckless disregard for and willful blindness to [Plaintiff's] rights." ECF No. 21 at ¶¶ 63, 67; *see also id.* at ¶¶ 33, 36, 38; ECF No. 8-4 (evidence of the Cybersquatting Defendants' ongoing willful infringement of the [Plaintiff's] Marks). Therefore, the Plaintiff has sufficiently alleged facts establishing each of the elements necessary to state a claim for cybersquatting under § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), and the Plaintiff is accordingly entitled to default judgment against each of the Cybersquatting Defendants on Count III.

*4. Common Law Unfair Competition and Trademark Infringement (Counts IV and V)*

"The analysis of Florida common law claims of trademark infringement and unfair competition is the same as federal claims." *GR Opco, LLC v. Eleven IP Holdings*, No. 22-24119-CIV, 2024 WL 4110524, at *6 (S.D. Fla. July 17, 2024), *report and recommendation adopted*, 2024 WL 4104288 (S.D. Fla. Sept. 5, 2024); *see also, e.g.*, *KAWS, Inc. v. Printify Inc.*, No. 23-CV-24063, 2024 WL 3916493, at *6 (S.D. Fla. Aug. 23, 2024) ("Florida law unfair competition claims are evaluated in same manner as trademark infringement claims."); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1362 (S.D. Fla. 2017) (concluding that "the legal analysis for Lanham Act claims applies to" Florida claims of unfair competition); *PetMed XPRESS, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) ("The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act."); *Investacorp, Inc. v. Arabian Investment Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (recognizing that the analysis of Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim).

As to Count IV, the Plaintiff alleged that the Defendants are "promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and infringements" of the Plaintiff's Marks and using the Plaintiff's Marks to "unfairly compete with [Plaintiff] and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web," all of which is "likely to cause and [is] causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sole therein by their use of the [Plaintiff's] Marks." ECF No. 21 at ¶¶ 73-74. As to Count V, the Plaintiff alleged that it is the

10

owner of all common law rights in and to the Plaintiff's Marks and that the "Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods" bearing or using the Plaintiff's Marks. *Id.* at ¶¶ 77, 80.

Thus, the Plaintiff has sufficiently alleged facts establishing the elements of its common law unfair competition and trademark infringement claims and is entitled to default judgment on both claims.

Here, the Plaintiff has alleged sufficient facts to establish the elements of each of its claims. The factual allegations in the Plaintiff's Amended Complaint have been substantiated by sworn declarations and other evidence establishing the Defendants' liability under each of the claims asserted in the Amended Complaint. *See* ECF Nos. 8-1, 8-2, 8-3, 8-4, 40-1, 40-3. Accordingly, entry of default judgment in favor of the Plaintiff and against the Defendants pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### B. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See, e.g.*, *PetMed XPRESS, Inc.*, 336 F. Supp. 2d at 1222-23; *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006).

Permanent injunctive relief is appropriate where a Plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange*, LLC, 547 U.S. 388, 392-93 (2006). The Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). The Plaintiff's Amended Complaint alleges that the Defendants' unlawful actions have caused Plaintiff irreparable injury, including to Plaintiff's goodwill and reputation, and will continue to do so if the Defendants are not permanently enjoined. *See, e.g.*, ECF No. 21 at ¶¶ 4, 26, 30, 44, 50, 60, 70. Further, the Amended Complaint alleges, and the submissions by Plaintiff show, that the Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and infringements of the Plaintiff's Marks, and consumers viewing Defendants' counterfeit products would confuse them for genuine products bearing the Plaintiff's Marks. *See, e.g.*, *id.* at ¶¶ 24, 31, 48-49, 55, 73-74, 79-80.

Plaintiff has no adequate remedy at law so long as the Defendants continue to operate their websites because the Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to the Plaintiff's reputation and goodwill that will result if the Defendants' infringing and counterfeiting actions are

allowed to continue. Moreover, the Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. *See, e.g.*, *id.* at ¶¶ 26, 60. By contrast, the Defendants face no hardship if they are prohibited from the continued infringement of the Plaintiff's Marks, which is an unlawful act.

Finally, the public interest supports the issuance of a permanent injunction against the Defendants to prevent consumers from being misled by the Defendants' counterfeit products. *See Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (finding that the imposition of an injunction would not disserve the public interest because "the public interest is the interest in upholding copyright protections") (quoting *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993)); *Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

Unless the Defendants are enjoined from continuing to infringe on the Plaintiff's Marks, they will be free to continue infringing on the Plaintiff's trademark rights with impunity and will continue to defraud the public with their illegal activities. In addition, upon a finding of liability pursuant to the ACPA, a court may "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *Louis Vuitton Malletier v. aaaimitationbags.com*, No. 18-62354-CIV-ALTONAGA, 2019 WL 2008910, at *6 (S.D. Fla. March 29, 2019) (quoting 15 U.S.C. § 1125(d)(1)(c)); *see also, e.g.*, *Punch Clock, Inc.*, 553 F. Supp. 2d at 1359 (awarding injunctive relief ordering transfer of domain name to plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C)). Furthermore, "[t]he Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities," which may properly include "injunctive relief to eliminate the means by which Defendants are conducting their unlawful

activities" by "[o]rdering the cancellation or transfer" to Plaintiff of the domain names used by Defendants for their infringing activities, so that the domain names "may be disabled from further use as platforms for the infringement of Plaintiff['s] intellectual property rights." *ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *5-6 & n.5 (S.D. Fla. Dec. 27, 2017) (collecting cases); *see also, e.g.*, *Malletier v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A,"* No. 25-60003-CIV, 2025 WL 2256488, at *6 (S.D. Fla. July 30, 2025).

Accordingly, the undersigned recommends that Plaintiff's request for a permanent injunctive relief be granted.

### C. Requested Statutory Damages

#### 1. Damages as to Count I (as well as to Counts II, IV, and V)

In addition to injunctive relief, the Plaintiff seeks statutory damages. *See* ECF No. 40 at 1, 13. In a case involving the use of counterfeit marks in connection with a "sale, offering for sale, or distribution" of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in a sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C § 1117(c)(2). Here, the Plaintiff has elected statutory damages pursuant to § 1117(c) as to Count I of the Amended Complaint. *See* ECF No. 40 at 12.

Statutory damages under the Lanham Act are "particularly appropriate in the default judgment context" because it is difficult to ascertain the defendants' profits and because the defendants have not participated in the litigation. *See CreeLED, Inc. v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule "A,"* No. 22-CV-23683-JEM/Becerra, 2023 WL

14

6130593, at *4 (S.D. Fla. Sept. 11, 2023) (citing *Tiffany (NJ) LLC v. Benefitfortiffany.com*, No. 16-60829-Civ-Lenard/Goodman, 2016 WL 8679081, at *7 (S.D. Fla. Nov. 3, 2016)); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). The Court has wide discretion to determine the amount of such statutory damages. *See PetMed Express*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F. 2d 839, 853 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *See Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-civ, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enters. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). An award of statutory damages pursuant to 15 U.S.C. § 1117(c) is "intended not just for compensation for losses, but also to deter wrongful conduct." *See CreeLED*, 2023 WL 6130593, at *4 (citing *PetMed Express*, 336 F. Supp. 2d at 1220-21).

Here, the allegations in the Plaintiff's Amended Complaint, which are taken as true, establish that the Defendants intentionally copied the Plaintiff's Marks for the purpose of deriving a benefit from the Plaintiff's goodwill and reputation. *See* ECF No. 21 at ¶¶ 28, 30. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that the Defendants do not continue their intentional and willful counterfeiting activities.

The record in this case demonstrates that each of the Defendants promoted, advertised, distributed, offered for sale, and/or sold products bearing marks that were, in fact, counterfeits of at least one of the Plaintiff's Marks. *See* ECF No. 21 at ¶¶ 10, 23, 48, 79; ECF No. 8-4; ECF No. 40-1 at ¶ 5. Based on the above considerations, the Plaintiff requests that the Court award statutory damages of $100,000.00 per Defendant because "each Defendant used at least one counterfeit mark on one type of good." ECF No. 40 at 13; *see* ECF No. 40-1 at ¶ 5. The requested amount of statutory damages should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe on the Plaintiff's Marks, compensate the Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The undersigned finds that this requested award of statutory damages—$100,000.00 per Defendant—falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.[5]

2. *Damages as to Count III for Cybersquatting*

The Lanham Act also permits the recovery of statutory damages for the Plaintiff's cybersquatting claim. "Pursuant to the ACPA, the Court may award statutory damages 'in the amount of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just.'" *Punch Clock*, 553 F. Supp. 2d at 1359 (quoting 15 U.S.C. §1117(d)); *see also Louis Vuitton Malletier*, 2019 WL 2008910, at *6 (A plaintiff "may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just." (citing U.S.C. § 1117(d))). Here, the Plaintiff "elects statutory damages and submits that in view of the Cybersquatting Defendants'

---

[5] Although the Plaintiff has also asserted claims for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), and unfair competition (Count IV) and trademark infringement (Count V) under Florida common law, the Plaintiff acknowledges that damages for such claims are encompassed within its requested damages for Count I pursuant to § 1117(c), and the Plaintiff seeks no additional damages based on those claims. *See* ECF No. 40 at 14.

intentional, wrongful behavior, an award in the amount of $10,000.00 against each of the Cybersquatting Defendants for each of their respective Cybersquatted E-commerce Store Names . . . would be just." ECF No. 40 at 16. The undersigned finds that the requested statutory damages award of $10,000.00 against each of the Cybersquatting Defendants, that is, Defendant 1 (oncloudsshoesforall.com); Defendant 2 (on-cloudy.com); and Defendant 3 (shuckson.com), is warranted and just. *See, e.g.*, *Taverna Opa Trademark Corp. v. Ismail*, No. 08-cv-20776, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages against a defendant for cybersquatting involving a single domain name). The undersigned accordingly recommends the Court award Plaintiff an additional $10,000.00 in statutory damages against Defendant 1, Defendant 2, and Defendant 3.

## IV.    CONCLUSION

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Motion for Entry of Default Final Judgment Against Defendants, ECF No. 40, be **GRANTED**, that final default judgment be entered in favor of the Plaintiff and against the Defendants, and that the Court award damages and injunctive relief as described above.

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation. Accordingly, the parties shall have **until September 19, 2025,** to serve and file written objections, if any, to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474

17

U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, on this 15th day of September, 2025.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
      Counsel of Record

## SCHEDULE A

## DEFENDANTS BY E-COMMERCE STORE NAME

| Def. No. | Defendant / E-commerce Store Name |
|---|---|
| 1 | oncloudshoesforall.com |
| 2 | on-cloudy.com |
| 3 | shuckson.com |
| 4 | okdbest.com |
| 5 | reverieh.com |
| 6 | letfofact.life |
| 6 | topdteven.best |
| 7 | usfashionbuy.com |